[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On June 7, 1996, the Statewide Grievance Committee filed a three count presentment seeking to discipline the respondent for misconduct not occurring in the actual presence of the court, involving his character, integrity and professional standing and conduct. Although he never actually filed an appearance, the respondent did file several pro se pleadings. In September of 1996, Attorney Max F. Brunswick filed his appearance on behalf of the respondent "in addition to appearance already on file". A CT Page 4721 review of the pleadings reveals that all pleadings on behalf of the respondent-were filed by the respondent and not by Attorney Brunswick. The respondent finally filed a pro se appearance on October 17, 1996. The appearance did not indicate whether it was intended to be in lieu of or in addition to Brunswick's appearance.
The petitioner filed an amended three count petition in September of 1996, and a hearing was held before Judge Hodgson on October 17, 1996. In her memorandum of decision, Judge Hodgson found that Statewide Grievance Committee had proved all three counts of the complaint, but noted that as other grievances were pending arising out of the same period of time covered by the three counts before her, she would defer the imposition of sanctions until after the respondent was presented on those additional grievances so that the sanction to be imposed would encompass all acts of misconduct by the respondent. Judge Hodgson also recognized that the incidents of misconduct occurred during the period when the respondent was admittedly impaired by substance abuse, and she therefore noted that the "respondent should be aware that the court's judgment as to the necessary sanctions is likely to be affected by actual evidence from treating professionals as to his success in defeating his substance abuse problems and plan for treatment to prevent further impairment by those problems of his fitness to practice law responsibly."
Presently before the court is the petitioner's third amended complaint. The first three counts are the ones which Judge Hodgson already found the petitioner to have proved at the October 17, 1996 hearing. The hearing on the remaining four counts was held before the undersigned on March 25, 1999. At that hearing, Attorney Brunswick appeared and indicated that although he had spoken to the respondent two or three days previously, and that during that conversation, the respondent had indicated his intention to appear at this hearing, the respondent was nowhere to be seen. In addition, Attorney Brunswick reported a telephone conversation with the respondent's mother earlier that day, in which she indicated that she had not seen the respondent for several days and did not know where he was. Attorney Brunswick expressed his concern that his client might still be impaired as a result of substance abuse and that he was concerned for his well being. He asked for a continuance which, under all the circumstances, the court denied, and the hearing went forward. CT Page 4722 With respect to the fourth count, the court heard testimony from Attorney Eugene Melchionne and his paralegal, Theresa Devereux, regarding telephone conversations with the respondent in which the respondent made representations that he would amend a bankruptcy plan being filed on behalf of his client, Joseph DeMartino, so as to reflect accurately amounts due to Melchionne's client. Based on these representations, Melchionne did not attend the bankruptcy hearing, and the plan submitted to the bankruptcy judge did not contain the changes the respondent had promised to make.
The evidence that respondent personally submitted the unchanged plan to the bankruptcy court was admittedly circumstantial, in that no witness testified that he or she saw the respondent do it. Melchionne, however, presented persuasive evidence on the customs and procedures of the bankruptcy court to the effect that the bankruptcy judge would not have accepted the plan unless counsel had been there in person along with his client to submit it.
Melchionne testified to numerous efforts to contact the respondent after he learned that the unamended plan had been filed but received no response. When he drove by respondent's office to try to speak with him directly, it was locked and appeared to have been closed. Melchionne never saw the respondent with regard to this case again, although he did have brief telephonic conferences with him on another case. In that matter, the respondent had called him three times, using foul language and speaking incoherently. Melchionne eventually hung up on him.
With respect to the Fifth Count, the Petitioner submitted a letter from the Respondent, dated May 12, 1997, in which he admits that he is "guilty as charged in that I did not diligently represent Mr. and Mrs. Edwards; and in that I did not respond to their reasonable inquiries. I failed in these ways during a time in which I was struggling with an alcohol and substance abuse problem." The petitioner also introduced certified court records showing that the Edwards' bankruptcy petition was dismissed because of the respondent's neglect.
With respect to the Sixth Count, Michael Smart testified that he had been the complainant in Smart v. Calabrese, Grievance Complaint No. 95-0077, in which the respondent had been reprimanded and ordered to pay restitution to Smart and his wife in the amount of $1480. Smart testified that to date, the CT Page 4723 respondent had made no restitution payments whatever.
With respect to the Seventh Count, the petitioner introduced a transcript of proceedings before the Statewide Grievance Committee in which the respondent admitted that he had failed to appear at a bankruptcy hearing on behalf of his client, that he did not tell the client that he would not appear. The case was subsequently continued at the client's request but was later dismissed when because the respondent did not file schedules as required by law. The respondent indicated that he had withdrawn from the practice of law during this period of time, but did not communicate this to his client.
Based on this evidence, the court finds that the petitioner has proved by clear and convincing evidence that the respondent violated rules 4.1 and 8.4 of the Rules of Professional Conduct by representing to Attorney Melchionne that he would amend the chapter 13 plan, failing to do so, and then filing the original plan with a bankruptcy court. By filing the original plan in spite of his agreement and failing to take any remedial action thereafter, the respondent knowingly offered false evidence to a tribunal, in violation of rules 3.3(a)(4) and 8.4 of the Rules of Professional Conduct. (Count 4)
The court finds further that by failing to represent the Edwards family diligently in their bankruptcy proceeding, by failing to appear at the creditors' meeting and hearing, and by failing to protect his clients' interests subsequent to the filing of a motion to dismiss by the trustee, respondent violated rules 1.3 and 8.4 of the Rules of Professional Conduct. By failing to return his clients' phone calls, he also violated rule 1.4 of the Rules of Professional Conduct. (Count 5)
The court also finds that the respondent has failed to make restitution to Michael and Elaine Smart in the amount of $1,480.00 as ordered in the matter of Smart v. Calabrese, Grievance Complaint No. 95-0077, in violation of Practice Book § 2-37a. (Count 6)
Finally, the court finds that by failing to represent Harris diligently in her bankruptcy proceeding, by failing to appear at hearings, failing to respond to a motion to dismiss, by abandoning her case without notice to her, and by failing to keep her informed, respondent violated rules 1.3 and 1.4 of the Rules of Professional Conduct. (Count 7) CT Page 4724
The court also notes having received a hand delivered letter from the respondent dated March 30, 1999 apologizing for his failure to appear at the March 25 hearing and stating "I am impaired as a result of substance abuse." He enclosed a motion to continue the hearing and requested the opportunity to file an answer and special defenses. He also stated "I never told Melchionne that I would amend a chapter 13 plan. His words to that affect (sic) are false." The undersigned has denied the motion for a continuance.
On April 8, 1999 the respondent filed a document called "Motion for Order of Defendant's Case in Chief," in which he reiterates that he did not attend the March 25, 1999 hearing "as a result of impairment from substance abuse." He also argues that because, if he had been in attendance and begun his defense he would not have been able to finish, the court should reopen the hearing to allow him to present his defense.
In this motion, the respondent calls Melchionne and Devereux "prevaricators." He also seems to suggest that because he had communicated to the grievance committee his intention not to comply with the order of restitution in the Smart case, he ought to be excused from doing so. The respondent appears to have no insight into his own conduct, and he certainly has no remorse. The undersigned has denied the "Motion for Order of Defendant's Case in Chief."
The respondent was admitted to the bar of the State of Connecticut on November 19, 1987. On November 20, 1995, he was suspended from the practice of law in the matter of StatewideGrievance Committee v. Edan F. Calabrese, Docket No. CV95-0369697, for a period of four months for failing to file a brief in a timely manner in spite of inquiries from a judge as to the whereabouts of the brief and for failing to appear at a hearing on an uncontested dissolution of marriage matter and then failing to respond to his client's request for a refund of his fee.
On August 18, 1994, the respondent was reprimanded by the State Grievance Committee in Mark v. Calabrese, Grievance Complaint No. 93-0070, for failing to keep his clients reasonably informed about the terms of a matter in violation of rules 1.4 (a) and 1.4(b) of the Rules of Professional Conduct. On September 22, 1995, he was reprimanded again by the Statewide CT Page 4725 Grievance Committee in Aponte v. Calabrese, Grievance Complaint No. 93-1046, for failing to exercise reasonable diligence in representing a client in a habeas corpus matter in violation of rule 1.3 of the Rules of Professional Conduct and for failing to comply with the attorney registration requirements of Practice Book § 27A. In November 21, 1996, he was again represented in the matter of Smart v. Calabrese, Grievance Complaint No. 95-0077, for failing to act in reasonable diligence in connection with a bankruptcy matter, in violation of rule 1.3 of the Rules of Professional Conduct and by failing to adequately communicate with his clients concerning the status of the matter in violation of rule 1.4 of the Rules of Professional Conduct. It was during that proceeding that he was ordered to make restitution to his clients in the amount of $1,480.00, the failure of which was the subject of count six of the present presentment.
On May 15, 1997, the respondent was reprimanded in the matter of Johnson v. Calabrese, Grievance Complaint No. 95-0814 for failing to act with reasonable diligence in connection with a bankruptcy matter in violation of rule 1.3 of the Rules of Professional Conduct and failing to keep his client reasonably informed about the status of a matter in violation of rule 1.4 the Rules of Professional Conduct. On the same day, he was also reprimanded in the matter of Lucatino v. Calabrese, Grievance Complaint No. 95-1072, for failing to act with reasonable diligence in connection with his client's divorce matter, in violation of rule 1.3 of the Rules of Professional Conduct and for failing to keep the client adequately informed about the status of the case in violation of rule 1.4 by the Rules of Professional Conduct. Finally, on July 16, 1998, the respondent was reprimanded by the Statewide Grievance Committee in the matter of Polewsky v. Calabrese, Grievance Complaint No. 96-1059, for failing to inform a client that he would not represent the client in a matter, in violation of rule 1.4 of the Rules of Professional Conduct and by failing to deliver an insurance check to a client in violation of rule 1.15 of the Rules of Professional Conduct.
It is apparent from the foregoing list of disciplinary proceedings that the respondent has repeatedly violated the Rules of Professional Conduct over a period of several years. Although no direct evidence of substance abuse was presented to the undersigned in the course of the hearing, it is apparent from Judge Hodgson's memorandum of decision, the comments of Attorney Brunswick and the respondent's own letter to the undersigned that CT Page 4726 substance abuse has had a substantial impact on the respondent's life and has severely impaired his ability to practice law. Additionally, although Judge Hodgson at the October 17, 1996 hearing specifically invited the respondent to present evidence of his treatment for substance abuse, the respondent has not done so and has suggested, through his comments and conduct, that his situation has only grown worse.
A presentment proceeding "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." Statewide Grievance Committee v.Rozbicki, 219 473, 483 (1991), cert. denied, 502 U.S. 1094,112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). The function of the grievance committee is to initiate presentment and thereafter a de novo evidentiary proceeding is carried out by the court, with whom rests the ultimate responsibility to determine whether an act or acts of misconduct occurred. Statewide Grievance Committeev. Presnick, supra, 215 Conn. 167. "In presentment proceedings, the Statewide Grievance Committee must prove by clear and convincing evidence that the attorney misconduct it alleges has occurred." Statewide Grievance Committee v. Whitney,227 Conn. 829, 838 (1993). In this case, as previously noted, Judge Hodgson has found that the Statewide Grievance Committee proved the first three counts of what is now the Third Amended Complaint, and the undersigned has now found that the Committee has proved by clear and convincing evidence the fourth, fifth sixth and seventh counts.
Practice Book Sec. 2-41 then requires the reviewing court to determine "the extent of the final discipline to be imposed. . . ." The "paramount importance in attorney disciplinary matters is the protection of the court, the profession of the law and of the public against offenses of attorneys which involve their character, integrity and professional standing." StatewideGrievance Committee v. Shluger, 230 Conn. 668, 681 (1994). "Courts are, as they should be, left free to act as may in each case seem best in this matter of most important concern to them and to the administration of justice." In re Peck, 88 Conn. 447, 457 (1914).
Although not formally adopted by the judges of this state, the American Bar Association has adopted Standards for Imposing Lawyer Sanctions which utilize, inter alia, a system for comparing aggravating and mitigating factors. In StatewideGrievance Committee v. Shluger, supra, 230 Conn. 673, f.10, the CT Page 4727 court set forth the factors and ultimately reviewed and upheld the trial court's decision based on those factors. Id., 679-680.
The only possibly mitigating factor in the respondent's favor is the fact that he is apparently, and by his own admission, substance dependent. Any mitigating effect of this condition, however, is completely undermined by the total lack of evidence that the respondent has undertaken any steps to address it. In her Memorandum of Decision regarding the first three counts of this presentment, Judge Hodgson specifically stated that the court would look for evidence of substance abuse treatment when it came time to consider the discipline to be imposed. Not only has no such evidence been submitted, but, to the contrary, the respondent has admitted that he failed to appear for his final court hearing on March 25 because he was impaired due to substance abuse. None of the other potential mitigating factors suggested by the ABA is present in this case.
Aggravating factors include the fact that the respondent has been the subject of seven prior disciplinary actions, including a suspension from practice by this court. Moreover, the various offenses for which he has been previously disciplined, as well as those which are the subject of the present presentment, display a pattern of deceit toward fellow members of the bar and the court, and disregard for the welfare of his clients. His failure, without any explanation, to make restitution payments to the clients he has wronged is especially troubling. He indicates no insight into his failings. Indeed, after the hearing in this matter had concluded in his absence, his letter to the court seeking to reopen the proceedings only accuses the attorney who testified against him of being a liar. The present presentment includes multiple offenses, another aggravating factor. Additionally, the respondent has failed to comply with orders entered in prior disciplinary proceedings, and this fact is also an aggravating factor.
The respondent is unfit to practice law. His continuing to practice law under any circumstances presents grave dangers to the public and to the profession. The court appreciates the power that addiction to any substance can assert over the life of any individual, lay or professional, and that overcoming substance abuse and/or dependency may be one of the most difficult tasks any human being can undertake. Its sanction is not a punishment for failure to confront this problem, but rather an action undertaken as necessary to protect the public from the CT Page 4728 consequences of the respondent's inability to do so. It will therefore be the order of the court that the respondent be disbarred.
Unless otherwise specified, disbarment carries with it the opportunity to apply for reinstatement at some future date. See In Re Application of Morton J. Dimenstein, 36 Conn. Sup. 41
(1979). As deplorable as the respondent's conduct has been, the court cannot conclude that there are no circumstances under which the respondent might be able to present a compelling case for reinstatement at some time in the rather distant future. Reinstatement, of course, is not automatic and will be a privilege that the respondent will have to earn. Certainly, no application for reinstatement will be considered until after all previously ordered restitution requirements have been met, and until after the respondent has been able to satisfy the court that he has received and profited from "appropriate substance abuse evaluation, treatment, counseling and monitoring.
It is therefore the judgment of this court that the respondent, Edan F. Calabrese, be disbarred. Although it does not appear that the respondent is currently representing any clients, Attorney Joseph Rini is appointed to inventory the respondent's files and protect the interests of his clients, if any.
Jonathon E. Silbert, Judge